# Berkebile v. Nationwide Insurance Company

*Alexander Ogle,* for plaintiffs.
*Samuel D. Clapper,* for defendants.

SHAULIS, *J.,* November 17, 1977—This case represents the first time this court has been called upon to interpret provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. (hereinafter referred to as No-fault Act and cited by Purdon's section numbers). The matter is now before the court on defendants' preliminary objections to plaintiffs' complaint.

## 1. BACKGROUND

The No-fault Act was intended to eliminate the necessity of the victim of a motor vehicle accident having to demonstrate the fault of another party in order to be compensated for injuries incurred as a result of the accident, a process often entailing extensive litigation and long periods of time. The No-fault Act created a system whereby every victim would receive prompt payment of basic medical and rehabilitation costs and recover a reasonable amount for work loss, replacement services and survivor's loss. These four elements comprise no-fault's "basic loss benefits," §1009.202, and are referred to by insurers as basic "personal injury protection" or "PIP", 31 Pa. Code §66.2(A). See §1009.102. See generally, 7 Blashfield, Automobile Law, §275.1 et seq. (3d ed.).

The No-fault Act requires every motor vehicle owner to provide security for payment of his own basic loss benefits and for certain bodily injury liability and property damage liability to others arising from the maintenance or use of his vehicle. The most common way of providing such security is through a contract or policy with an insurance carrier. See §1009.104. The insurer is obligated to pay the victim basic loss benefits (see §1009.103 and §1009.202) as required by the No-fault Act and such additional loss benefits (see §1009.103 and §1009.207) as provided by the terms of the insurance policy: §1009.111(b) and §1009.204. When necessary, the victim may bring an action against the insurer who withholds payment of no-fault benefits: §1009.106.

The No-fault Act partially abolishes tort liability for injuries arising out of the maintenance or use of a motor vehicle. As relevant to the present case, the

No-fault Act still permits the victim to bring suit under traditional tort concepts to recover for basic loss benefits not compensated by the insurer, §1009.301(a)(4), and for non-economic detriment if certain conditions are met, §1009.301(a)(5). Non-economic detriment is defined as "pain, suffering, inconvenience, physical impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle. The term does not include punitive or exemplary damages." §1009.103.

## 2. THE COMPLAINT

As alleged by plaintiffs Walter and Barbara Berkebile, this case arises from a traffic accident in which a Dodge operated by defendant Lawrence Voll struck the rear of plaintiffs' Buick. The complaint, filed June 28, 1977, alleges that on May 1, 1976, plaintiff Barbara Berkebile had stopped her Buick at a red traffic signal on Route 30 in Hempfield Township, Westmoreland County. Plaintiffs claim Voll was negligent in not being able to stop his car before colliding with the rear of plaintiffs' car (specific averments of negligence are found in paragraphs 8 and 9 of the complaint). Plaintiff wife suffered various serious injuries which are described fully in paragraph 10 of the complaint.[1]

1. On August 26, 1977, defendant Voll joined as an additional defendant, Joann Myers, alleging that Myers' Ford collided with the rear of his Dodge which was also stopped for the traffic light, forcing him into the rear of plaintiffs' Buick. Voll alleges that Myers is solely responsible for the injuries arising from this accident, or in the alternative that he has a right to contribution from Myers if he should be found liable. The preliminary objections now before the court do not involve this complaint against additional defendant.

The complaint asserts a cause of action in trespass against Voll by plaintiff wife under the provisions of the No-fault Act preserving tort liability. Specifically paragraph 11 would fit the exception for medical expenses in excess of $750 created by §1009.301(a)(5)(B); paragraphs 12 and 13 would fit the exception for losses not covered by other basic loss benefits created by §1009.301(a)(4); paragraph 15 would fit what may be called the "pain and suffering" exception created by §1009.301(a)(5)(A); and paragraph 16 would fit what may be called the "customary acts and duties" exception created by §1009.301(a)(5)(c).

The complaint asserts a second cause of action in trespass against Voll by plaintiff husband. The cause of action may generally be classified as for expenses incurred because of his wife's injuries and for loss of consortium; these also seem to fit within the tort exceptions of §§1009.301(a)(4) and (5) discussed above.[2]

The third cause of action asserted in the complaint is in assumpsit by plaintiffs husband and wife against Nationwide Mutual Insurance Company. Plaintiffs were insured under a Nationwide Century II Auto Policy, making Nationwide the source of no-fault benefits due the injured wife.

---

2. There has been no objection to the specificity of the complaint in regard to pleading the causes of action based upon the tort immunity exceptions of the No-fault Act. The few cases we have discovered interpreting the No-fault Act have dealt with problems concerning the facts a plaintiff must allege in order to qualify for one of these exceptions. Courts have referred to this as "pleading the tort threshold." See: O'Sullivan v. Ruszecki, 2 D. & C. 3rd 276 (Allegheny Co. 1977); Bromiley v. Collins, 1 D. & C. 3d 94, 29 Bucks 365 (1977). See also, Rescigno v. Picinich, 151 N.J. Super. 587, 377 A. 2d 733 (1977).

Generally, the assumpsit action alleges that as a result of the accident plaintiff wife has become entitled to various basic loss benefits contractually through endorsement 1232 to Nationwide's policy: see §1009.202 and 31 Pa. Code §66.2(A); and to additional loss benefits through endorsement 1233 to Nationwide's policy: see §1009.207 and 31 Pa. Code §66.2(B). Plaintiffs allege they have given notice and the required proof of the facts of their loss and the amount of the loss sustained to Nationwide, but Nationwide has refused to pay certain benefits allegedly due, as fully described in paragraph 36. The complaint does not aver how or if Nationwide notified plaintiffs of the rejection of the claim for the items refused: see §1009.106(a)(5). Nor does the complaint allege that any benefits have been paid, although there is an implication that some benefits have been paid. Plaintiffs do allege that since they obtained counsel on or about March 1, 1977, Nationwide has paid no benefits whatsoever.

Finally, in the "prayer for relief," see Pa.R.C.P. 1021, in addition to the benefits claimed to be due, plaintiffs ask for punitive or exemplary damages based upon Nationwide's "willful, deliberate and malicious conduct." The basis of this request is apparently the allegations that Nationwide has subjected plaintiff wife to repeated medical examinations (see paragraphs 39 and 40) and paragraph 42, which reads:

"Nationwide has persisted in harassing the plaintiff-wife by continually implying or suggesting that plaintiff-wife has a psychiatric or psychological problem, which conduct by Nationwide has caused and aggravated plaintiff-wife's physical injuries and mental condition and has caused and

continues to cause her great humiliation and embarrassment."

## 3. THE PRELIMINARY OBJECTIONS

On September 12, 1977, defendants Voll and Nationwide filed preliminary objections which consist of four motions to strike. Pa.R.C.P. 1017(b)(2) allows the court to strike a pleading or portion of a pleading because of lack of conformity to law or rule of court or because of scandalous or impertinent matter.

(1) Nationwide was the insurance carrier of both plaintiffs and defendant Voll. In paragraph 14 of the trespass action, plaintiffs allege that Nationwide was Voll's liability carrier and that Nationwide has paid all of plaintiff's property damage including the deductible. Paragraph 41 of the assumpsit action repeats this allegation and adds that payment of plaintiff's deductible was a concession of Voll's negligence.

Voll moves to strike paragraph 14 as irrelevant. At oral argument, plaintiffs' counsel admitted that paragraph 14 was irrelevant and should be stricken. Nationwide moves to strike paragraph 41 on the same grounds. Plaintiffs' counsel argues that paragraph 41 has some bearing upon his proof of punitive damages. We do not see how, and agree that paragraph 41 should also be stricken. Facts which are not material or relevant to the issue are impertinent under Rule 1017(b)(2): 2 Goodrich-Amram 2d, §1017(b):(8). Reference to insurance coverage when the issue is negligence would be prejudicial to defendants and must be stricken.[3]

---

3. We also note that it is standard practice in automobile insurance, and a part of plaintiffs' policy here, for the insurer

Thus, the first two preliminary objections are sustained.

(2) The final two preliminary objections are not so easily disposed of. In the third objection, defendants move to strike the entire assumpsit action against Nationwide as a misjoinder of causes of action. It is clear that the trespass and assumpsit counts cannot be joined as causes of action against the same person under Pa.R.C.P. 1020(c). Plaintiff suggests the joinder is proper under Pa.R.C.P. 2229's provisions for permissive joinder. Defendants counter that, even though plaintiffs may have causes of actions against both defendants, there is no authority for combining both actions in one suit.

Rule 2229(b) reads: "A plaintiff may join as defendants persons against whom he asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action."

Defendants argue that the cause of action against Nationwide does not arise "out of the same transaction, occurrence, or series of transactions or occurrences" as the cause of action against Voll since the suit against Voll is based on negligence and the suit against Nationwide is based on contract. Defendants argue there is no "common question of law or fact affecting the liabilities" of Voll and Nationwide. See generally, 7 Goodrich-Amram 2d, §2229(b):5.

---

not to substract the deductible when both vehicles involved are insured by the same insurance carrier. This practice gives rise to no concession of negligence or fault by either of the insureds.

Superficially, defendant is correct that actions against these two different defendants, one in trespass, the other in assumpsit, may not be joined. However, we believe the complexities of the No-fault Act provide an exception in this case. Voll's potential liability for non-economic detriment under §1009.301(a)(5) is not related to any obligation on the part of Nationwide under its policy with plaintiffs. But, as we interpret it, Voll's liability for damages plaintiffs may recover under §1009.301(a)(4) is dependent upon what Nationwide may be obligated to pay plaintiff.

§1009.301(a)(4) provides that a person remains liable for loss which is not compensated because of any limitations in accordance with §§1009.202(a), (b), (c) and (d). Thus, if plaintiff's basic loss benefits would exceed those for which Nationwide is contractually liable, defendant Voll may be liable for the excess. This does seem to present a common question of law or fact affecting the liability of both defendants. It would seem that Nationwide's liability under its policy must be decided before Voll may be held liable, if found at fault, for the excess of these elements of damages.

A joint trial against Voll and Nationwide may indeed be prejudicial to both, but for convenience and in order to avoid unnecessary costs and delay to all parties, we think it appropriate that these actions remain as one during the pleading and pretrial stage. Convenience is further demonstrated by the representation of Voll and Nationwide by the same counsel.

Pa.R.C.P. 213 will allow us to sever the trespass and assumpsit actions at a later date if necessary. Rule 213 reads:

"(a) When actions involving a common question of law or fact are pending before the court, the court

on its own motion or on motion of any party may order a joint hearing or trial of any or all matters in issue in the actions, may order all of the actions consolidated, and may make such orders concerning proceedings therein as may avoid unnecessary costs or delay.

"(b) The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes or action, claims, counterclaims, set-offs, cross-suits, or issues."

For the reasons stated above, the third preliminary objection is overruled.

(3) In the fourth preliminary objection, defendants move alternatively to strike the assumpsit action or present a demurrer to the assumpsit action as it relates to punitive damages. If the court should permit an action for punitive damages, defendants ask for a more specific pleading.

We agree that the factual allegations would not support a claim for punitive damages. It is not clear whether punitive damages are to be based upon refusal of Nationwide to pay no-fault benefits or some other actions as alleged in paragraph 42 of the complaint. However, even if material facts were specifically pled, see, e.g., Spickler v. Lombardo (No. 3), 34 Somerset 131, punitive damages would not be recoverable in an assumpsit action. See, e.g., W. W. Coal Co. v. Penna. Nat. Mut. Cas. Ins. Co., 30 Somerset 69, 75 D. & C. 2d 621 (1975).

Plaintiffs argue that there is a trend in cases to acknowledge that a tort action may lie against an insurance company for wrongful refusal to pay when based upon a showing of malice or bad faith. Plaintiffs rely on the case of Gruenberg v. Aetna

Ins. Co., 108 Cal. Rptr. 480, 510 P. 2d 1032 (1973), for the proposition that punitive damages are recoverable from insurers. There, after reviewing other California cases, the California Supreme Court stated:

"In the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." 510 P. 2d at 1037. See also, e.g.: Carter v. Hartford Accident & Indem. Co., 423 F. Supp. 827 (E.D. Va. 1976); Escambia Treating Co. v. Aetna Cas. & Surety Co., 421 F. Supp. 1367 (N.D. Fla. 1976). All these cases speak of recovery *in tort.*

We have been unable to find an appellate Pennsylvania case so broadly accepting these principles. One recent Federal case applying Pennsylvania law seems to recognize the possibility of punitive damages based upon malicious conduct of an insurer. In Annett v. Nationwide Life Ins. Co., 410 F. Supp. 1265 (E.D. Pa. 1976), a beneficiary brought an action to recover the proceeds of a life insurance policy. The court found the decedent had made false statements in the insurance application, but

they had not been knowingly false and thus Nationwide could not avoid payment on the policy. The court further held that Nationwide's refusal to pay was not malicious or even unreasonable under the circumstances and punitive damages were unwarranted. The opinion cites no cases or other precedents indicating that punitive damages could properly be considered. Compare: Hamilton v. Hartford Acc. & Indem. Co., 425 F. Supp. 224 (E.D. Pa. 1977). It is clear that punitive damages cannot be recovered in an assumpsit action under Pennsylvania law.[4]

Even if punitive damages might be available against an insurer in a proper action in tort, we believe the No-fault Act expressly prohibits punitive damages based upon withholding of benefits. The No-fault Act allows interest on benefits not paid within 30 days at the rate of 18 percent per annum: §1009.106(a)(2). The No-fault Act allows a claimant of overdue benefits to recover attorney's fees from the insurer: §1009.107. An insurance statute allowing for punitive damages or attorney's fees is to be strictly construed: 46 C.J.S. 715, §§1406-9; Couch on Insurance (2d ed. 1966), §58.1 et seq.

---

4. For a discussion of the proof necessary to recover in a tort action, see W.W. Coal Co., supra, 30 Somerset at 72-74. In a recent case, another court has stated that punitive damages "are not recoverable in actions for breach of contract unless the breach amounts to an independent tort, when they may be recovered under proper allegations of malice, wantonness or oppression." Simon v. Technical Develop. Co., 63 Del. Co. 94, 95 (1975). See also: Uchrinscko v. Nationwide Mut. Ins. Co., 55 Westmoreland 85 (1972); Chissler v. Nationwide Ins. Co., 67 D. & C. 2d 225, 64 Luzerne 167 (1974); Cardwell v. International Housing Inc., 16 Lebanon 1 (1975); Guth v. Bloodstock Farms, 28 Bucks 295 (1976).

Judge Snyder of the U.S. District Court for Western Pennsylvania recently analyzed these sections of the No-fault Act after a plaintiff had claimed the insurer exhibited bad faith in not immediately paying no-fault benefits. After quoting §1009.106 and §1009.107, he said:

"From the foregoing, it is apparent that the Pennsylvania Legislature has provided in specific, detailed language for the rights, duties and liabilities of all parties involved in no-fault cases, including the eventuality of non-payment by an obligor by providing specific penalties in the event payment is not made within 30 days. These do not include punitive damages and the Plaintiff cannot therefore make such a recovery." O'Shanick v. Allstate Ins. Co., 431 F. Supp. 382, 384 (W.D. Pa. 1977).

We totally agree with this conclusion and will strike any reference to punitive damages based upon Nationwide's failure to pay the no-fault benefits alleged to be overdue. To this extent, the fourth preliminary objection is sustained.

## ORDER

Now, November 17, 1977, consistent with the above opinion, defendants' first, second, and fourth preliminary objections are sustained; defendants' third preliminary objection is overruled. Defendants shall have 20 days within which to file responsive pleadings.