**PENN–AMERICA INSURANCE COMPANY, Plaintiff,**

v.

**Gregory COFFEE, et al., Defendants.**

**No. 2:02–CV–632.**

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 9, 2003.

Geoffrey M. Bohn, Esquire, Joseph F. Cunningham, Esquire, Cunningham & Associates, Arlington, for Plaintiff Counsel.

Steve Simons, Jarratt, for Pro Se Defendant.

Gregory A. Giordano, Esquire, Virginia Beach, for Defendant A.J.Z. Counsel.

Thomas C. Dawson, Jr., Esquire, Norfolk, for Defendant State Farm Counsel.

Boyd Scarborough, Esquire, Portsmouth, for Defendant Sizemore Counsel.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant James A. Sizemore's ("Sizemore") motion to dismiss. For the reasons stated below, the court **GRANTS** defendant's motion.

On August 12, 2002, plaintiff Penn–America Insurance Company ("Penn–America") filed an action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201. The complaint named as defendants Gregory Coffee ("Coffee"); Steven Simons ("Simons"); A.J.Z., Inc., t/a A.J. Gators Grille & Sports Bar ("A.J.Z."); State Farm Mutual Automobile Insurance Company ("State Farm"); and James A. Sizemore. On October 17, 2002, Sizemore answered and filed the instant motion to dismiss and a memorandum in support. Penn–America responded on October 31, 2002. No reply from Sizemore has been received, and the deadline for such reply has passed. Therefore, this matter is ripe for review.

On April 5, 2001, Sizemore was struck in the parking lot of A.J.Z. by a vehicle driven by defendants Coffee and Simons, who had been engaged in a confrontation with employees of A.J.Z. in the parking lot of the restaurant. On June 10, 2002, Sizemore filed an action in the Circuit Court for the City of Chesapeake seeking $350,000 in compensatory damages and

$150,000 in punitive damages; defendants in this action were A.J.Z., Coffee, Simons, and State Farm.[1] At the time of the incident that is the crux of the suit, A.J.Z. was insured under a liability policy issued by Penn–America. Penn–America filed the August 12, 2002, action in this court seeking a declaration that it is not obligated to indemnify or defend A.J.Z. or any of the defendants for any claims or damages resulting from the underlying state court action filed by Sizemore.

 This court has the power to hear a declaratory judgment action under 28 U.S.C. § 2201. However, the action must still meet jurisdictional criteria. The matter before the court does so, as it is a "case of actual controversy" falling within the court's diversity jurisdiction. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir.1994). Though the Federal Declaratory Judgment Act gives district courts jurisdiction over such matters, it does not require them to exercise such jurisdiction. The United States Supreme Court addressed this matter in *Wilton v. Seven Falls Co.*, noting that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287, 115 S.Ct. 2137. Though the Fourth Circuit seemed to set constraints on the discretion of the district court to decline jurisdiction in *Nautilus*, it clarified the "rather wide discretion" of the courts

in *The Centennial Life Ins. Co. v. Poston:* "To whatever extent our previous decisions have implied further constraints on district court discretion, *see, e.g., Nautilus*, 15 F.3d at 375, those decisions must give way to the clear teachings of *Wilton.*" 88 F.3d 255, 257–58 (4th Cir.1996).

 In determining whether a declaratory judgment action is appropriate, the court should determine whether the "judgment will serve a useful purpose in clarifying and settling the legal relations at issue" and whether "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Centennial Life*, 88 F.3d at 256 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937)). Penn–America requests that this court declare its obligations to its insured and other defendants in the underlying state action. Such a declaration would certainly meet the criteria set out in *Centennial*. Therefore, the action before the court is appropriate.

 The court must next decide whether to exercise its discretion to hear the action for a declaratory judgment. In so doing, there are several factors that the court should consider: 1) the strength of the state's interest in deciding the issues raised in state court; 2) whether the issues can be resolved more efficiently in state court; 3) whether there are overlapping issues of fact or law that would cause entanglement between the state and federal court systems; and 4) whether the suit is being used for procedural fencing. *Nautilus*, 15 F.3d at 377. Overarching the analysis of these factors are "consider-

---

**1.** On October 16, 2002, Sizemore filed an amended complaint in state court, adding additional parties who were previously unknown. Penn–America filed a motion to amend with this court on November 12, 2002, to respond to those changes. However, because the court disposes of the case with the instant motion, the motion to amend is rendered moot.

ations of federalism, efficiency, and comity." *Id.* at 376.

The issues raised in the matter at hand are not novel issues. They are simple issues of causation. However, they are matters of state law, and there is an inherent state interest in deciding matters of state law. *See Fidelity & Guar. Ins. Underwriters v. Holt,* 2 F.Supp.2d 798, 801 (E.D.Va.1998); *see also Mitcheson v. Harris,* 955 F.2d 235, 237 (4th Cir.1992). As there is a parallel matter pending in state court, this court finds that the state has a strong interest in deciding those issues at the heart of the matter pending before it. Though order of filing is not dispositive, the court notes that Sizemore filed his action and raised the issues of causation in state court prior to Penn–America's filing of the instant action. Furthermore, the adjudication of the very same issues of causation present in the case before this court could be outcome-determinative in the state court proceeding. Therefore, the first factor weighs against this court exercising jurisdiction.

Analysis of the second factor does not weigh significantly in either direction. Either court could effectively adjudicate the issues at hand. Penn–America argues that this court could more efficiently decide the question, since Penn–America is not a party to the state action. Though Penn–America is not named as a defendant in the state court action, its insured, A.J.Z., is so named. Furthermore, the question of a duty to indemnify could be mooted, if the state court action is resolved in favor of A.J.Z. At best, this factor is neutral in the analysis.

It is in the third factor that the court finds the strongest argument for declining to exercise jurisdiction. Penn–America argues that there are no overlapping issues of fact and law because the policy excludes coverage whether or not the employees of A.J.Z. were acting within the scope of their employment. This court does not find the scope of employment issue to be the primary area of entanglement in the matter at hand. Rather, in determining whether the policy excludes coverage of Sizemore's injuries, it is necessary to litigate the chain of causation. The Penn–America policy contains an Assault and Battery Exclusion; the policy does not cover damages "resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises." (Assault and Battery Exclusion, attached as Ex. 3 to Compl.) The employees of A.J.Z. did not directly injure Sizemore; he was hit by the vehicle of patrons who had been involved in the altercation with A.J.Z.'s employees. In determining whether the exclusion applies, this court must resolve the factual issues surrounding the altercation and the injury to Sizemore to determine whether Sizemore's injuries "result[ed] from assault and battery." These issues of causation are the very issues that must be litigated in the state court case as well. If this action is allowed to proceed, both the federal and the state courts would be investing their respective resources in analyzing exactly the same set of facts using exactly the same law. Furthermore, there is the danger of preclusion, depending upon the timing of the respective decisions. Therefore, this factor weighs heavily in favor of this court refraining from exercising jurisdiction in the action for a declaratory judgment.

The final factor to be considered is procedural fencing. Though Penn–America is well within its rights, and the applicable law, in seeking a declaratory judgment from this court, the circumstances under which this action arose lead the court to question whether there is an element of procedural fencing involved. The state court matter was filed prior to the

action presently before the court, and a look at the parties to the action reveals that there are resident parties on both sides. Therefore, at the time Penn–America filed its action in federal court, it knew that the state action could not be removed, as there was no federal question and no diversity of parties. Rather than pursue its action in the same forum that hosted the underlying claims, Penn–America filed in federal court. The Declaratory Judgment Act was not intended to provide a loophole to allow parties to litigate in federal court issues that would otherwise be decided in state court. At this juncture, it is arguable that Penn–America is attempting to use the Act for exactly that purpose.[2] However, regardless of the weight of this factor, the court finds that other factors analyzed above weigh heavily against this court exercising jurisdiction and bases its decision to decline jurisdiction primarily on those factors.

For the reasons stated above, the court **GRANTS** defendant's motion to dismiss and dismisses the action without prejudice to determination of any issues in the state court proceeding or any future appropriate actions in federal court.[3]

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all parties.

**IT IS SO ORDERED.**

---

2. The court notes that Penn–America could well have future opportunities to pursue this matter in federal court. If the state court action had ended, and Penn–America were seeking a determination of the duty it owed to its insured, diversity would exist and Penn–America could proceed in federal court. At that juncture, the state court would have had the opportunity to decide the issues central to the personal injury action. The problem in the action currently before the court is that the state court has not decided the matters before it. Considerations of comity and federalism sway this court to refrain from exercising jurisdiction at this time.

